UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

        Plaintiff,

v.

THOMAS COOLEY, *et al.*,

        Defendants.
                                   /

Case No. 1:15-cv-320

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. Plaintiff's claim involves a broken tooth filling. This matter is now before the Court on a motions for summary judgment filed by defendants Anderson, Cooley and Heyns (docket no. 13) and defendant Fletcher (docket no. 19).

    **I.**    **Plaintiff's complaint**

Plaintiff has sued MDOC Director Daniel Heyns and three dentists, Dr. Thomas Cooley, Dr. Thomas Anderson, and Regional Dental Director Dr. Steven Fletcher.[1] Compl. (docket no. 1, PageID.3). On January 10, 2013, plaintiff received treatment for a broken filling. *Id.* PageID.7. Plaintiff alleged that Dr. Cooley took x-rays and filled the tooth. *Id.* "Shortly afterward" the filling fell out. *Id.* Contrary to plaintiff's allegation, the undisputed record established that it was Dr. Anderson, not Dr. Cooley, who provided treatment on January 10, 2013. *See* discussion, *infra*. For purposes of this report, the Court will assume that plaintiff's complaint contains a typographical

---

[1] In his affidavit, Dr. Fletcher identified himself as the former Regional Dental Director, having resigned from that position in February 2014. *See* Fletcher Aff. (docket no. 20-2, PageID.183).

error in ¶ 13 which incorrectly identifies Dr. Cooley as the treating dentist. *See* Compl. at PageID.7. After the filling fell out, plaintiff "immediately contacted dental staff" who told him to send a kite if severe pain persisted. *Id.* Plaintiff did not allege when the filling fell out. In addition, plaintiff's complaint contains no allegations of what occurred between January 10, 2013 and June 28, 2013.

Commencing in June 2013, and continuing over the summer, plaintiff sent a number of kites regarding his tooth. Plaintiff kited the dental staff about his tooth on June 14th complaining that his tooth became sensitive when the filling fell out. A corrections officer called the dental department for emergency treatment but no one was available. *Id.* at PageID.7-8. He kited again on June 28th. *Id.* at PageID.8. Dr. Cooley responded that plaintiff was on a waiting list and that he could purchase over the counter medications for his toothache. *Id.* Plaintiff kited the dental department on July 11th, stating that more of the filling fell out, he was in excruciating pain and wanted to be seen urgently. *Id.* Plaintiff kited again on July 27th complaining of a toothache. *Id.* On July 29th plaintiff was advised that he would be scheduled as soon as time permitted. *Id.* at PageID.9. Plaintiff filed a Step I grievance against the dental department. *Id.* On July 30th, plaintiff was transferred from the Ionia Correctional Facility (ICF) to the Lakeland Correctional Facility (LCF). *Id.* On July 31st, Dr. Cooley responded to the grievance stating that plaintiff was on the waiting list at ICF but that he had been transferred to LCF. *Id.*

On August 9th and 11th, plaintiff kited the dental department at LCF complaining of a toothache from a broken filling. *Id.* at PageID.10. On August 13th, he was scheduled for emergency treatment with dentist Dr. Hodge. *Id.* On August 18th, plaintiff kited the dental department stating that due to the pain he wanted his tooth extracted. *Id.* On August 20th, he was

scheduled for a dental emergency. *Id.* On August 21st, plaintiff sent another kite stating that he was in pain and asking to have his tooth pulled. *Id.*

Plaintiff was transferred to Carson City Correctional Facility (DRF). *Id.* On August 26th, plaintiff kited the dental department at DRF stating that he was in pain and wanted to see a dentist. *Id.* at PageID.10-11. Plaintiff's tooth was removed that day. *Id.* at PageID.33.

On October 14th, Dr. Fletcher responded to plaintiff's Step II grievance appeal stating that plaintiff was seen in the order he was placed on the list for dental work and that the work was completed on August 26th. *Id.* at PageID.11. Plaintiff was later transferred to the Oaks Correctional Facility (ECF). *Id.*

Plaintiff's complaint includes two counts. In Count I, plaintiff alleged that the four defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by depriving him of proper dental care. In Count II, plaintiff alleged that defendants Cooley and Anderson retaliated against him in violation of his First Amendment rights. Plaintiff seeks relief including damages in excess of $1,000,000.00.

  **II.**  **Defendants motions for summary judgment**

  **A.**  **Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Dr. Fletcher

Dr. Fletcher did not treat plaintiff. His only contact was as the reviewer of a Step II grievance appeal. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, Dr. Fletcher should be granted summary judgment.

### C. MDOC Director Heyns

Plaintiff does not allege that MDOC Director Heyns had any involvement in his dental treatment. Defendants Heyns may not be held liable under § 1983 for the unconstitutional conduct of his subordinates under a theory of respondeat superior. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir.2005). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

5

In his affidavit, Director Heyns stated that he had no personal involvement with plaintiff and was not directly or indirectly involved in a prisoner's medical/dental care. Heyns Aff. (docket no. 14-2, PageID.99-100). In this regard, Director Heyns cited the MDOC Policy Directive 03.04.100 ¶ L ("Health Services") (stating that "all medical, psychiatric, and dental matters involving medical judgment are the sole province of the responsible physician, psychiatrist, or dentist"). *Id.* In his response, plaintiff submitted a copy of a letter directed to Director Heyns dated April 11, 2013, in which he asked for assistance in getting dental treatment at ICF. Letter (April 11, 2013) (docket no. 18-3). The fact that plaintiff wrote a letter to the MDOC Director does not establish that the Director was personally involved in plaintiff's dental care to incur liability under § 1983. Accordingly, Director Heyns should be granted summary judgment.

**D.     Eighth Amendment claim**

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

For purposes of this motion, defendants concede that plaintiff's alleged dental condition was sufficient to establish the objective element of his Eighth Amendment claim. "Dental needs fall into the category 'of serious medical needs' because dental care is one of the most important needs of inmates." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (internal brackets omitted). Nevertheless, defendants contend that plaintiff's claim fails on the subjective component.

   1.   **Dr. Anderson**

Dr. Anderson treated plaintiff on January 10, 2103 at ICF. Anderson Aff. (docket no. 14-4, PageID.111). Dr. Anderson saw plaintiff on an emergency basis, x-rayed plaintiff's tooth#4, restored tooth #4 and advised plaintiff that the tooth had a guarded prognosis. *Id.*; Plaintiff's Dental Records (docket no. 14-3, PageID.105). Dr. Anderson stated that he did not see plaintiff again due to being assigned to another clinic. Anderson. Aff. at PageID.111; Plaintiff's Dental Records at PageID.105-109. Plaintiff's dental record does not reflect that Dr. Anderson was plaintiff's provider after January 10, 2013. Dental Record at PageID.104-109. Those records reflect that plaintiff did

7

not report any dental problem until June 14, 2013, when he complaint of a "broken filling/tooth, pain." *Id.* at PageID.104.  In an affidavit, plaintiff stated that he sent two personal letters to Dr. Anderson requesting treatment but that the dentist did not answer.  Burley Aff. (docket no. 18-2, PageID.148).  Plaintiff did not state when he wrote to Dr. Anderson or provide copies of these letters and no such letters appear in plaintiff's dental record submitted to the Court.  Plaintiff has failed to provide significant probative evidence to demonstrate that Dr. Anderson was his treating dentist after January 10, 2013 and that the dentist knew of and disregarded an excessive risk to his health or safety.  Accordingly, Dr. Anderson should be granted summary judgment as to the Eighth Amendment claim (Count I).

        **2.**     **Dr. Cooley**

Dr. Cooley's only involvement with plaintiff was responding to the June 28, 2013 kite. *See* Cooley Aff. (docket no. 14-3, PageID.102-103); Plaintiff's Dental Records at PageID.105-109.  At the time, Dr. Cooley was a dentist at ICF.  Cooley Aff. at PageID.102.  Plaintiff's kite made the following request:

> Cold [sic] you please advise me as to the status of filling my tooth? Also, am I on the list for a dental cleaning? Thank you for your concerns.

Plaintiff's Dental Records at PageID.104.

Later that day, Dr. Cooley provided the following response:

> Your teeth last were cleaned on 08/02/12 (ten months ago), and you have not yet sent any HCR asking for another teeth cleaning procedure.
>
> You on 06/14/13 sent a HCR about a broken filling, and your name is on the dental waiting list for that problem.
>
> We currently have a shortage of dental staff, and you will be seen as time and staff permit, please be patient.

> You can purchase over-the-counter analgesic meds (aspirin, acetaminophen, ibuprofen) from the Inmage Store to alleviate discomfort and toothache.

*Id.* at PageID.105; Kite Response (docket no. 5-1, PageID.61).  In his affidavit, Dr. Cooley stated that plaintiff was transferred to LCF on July 30, 2013, and that he had no involvement with plaintiff's dental care after the transfer.  Plaintiff's Dental Records at PageID.102-103.

In response to the motion, plaintiff has submitted a copy of a letter dated May 2, 2013, which he purportedly sent to Dr. Cooley (although the letter was addressed to "Dr. Cooper"), stating that Dr. Anderson appeared uninterested in repairing the tooth and asking Dr. Cooley to assist him in getting the tooth repaired.  Letter (May 2, 2013) (docket no. 18-4, PageID.151).  This letter does not appear in plaintiff's dental record.  Although this letter is dated May 2, 2013, plaintiff did not complain to the dental department about his tooth filling until over one month later on June 14, 2013.  Plaintiff's dental record reflects that Dr. Cooley responded to plaintiff's request and was unable to schedule plaintiff for an immediate examination.  However, plaintiff has failed to provide significant probative evidence to demonstrate that Dr. Cooley knew of and disregarded an excessive risk to plaintiff's health or safety.  Accordingly, Dr. Cooley should be granted summary judgment as to the Eighth Amendment claim (Count I).

      **E.**    **Retaliation**

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct;  (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was

9

motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Plaintiff does not allege the nature of the retaliatory acts. Plaintiff's complaint contained only a conclusory statement of retaliation, stating only that defendants Anderson and Cooley "did retaliate against Burley for filing a grievance about dental care in violation of Burley's protections under the First Amendment of the United States Constitution." Compl. at PageID.14. In short, plaintiff's complaint does not set forth sufficient allegations to support a retaliation claim. A properly pled complaint "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) ("because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations") (internal quotation marks omitted).

In his response, plaintiff claimed that defendants retaliated against him by refusing to provide him with dental treatment. Plaintiff's Response (docket no. 18, PageID.141). This is simply another conclusory claim. Plaintiff did not allege when he filed the Step I grievance, other than it was filed sometime after he received a kite response on July 29, 2013, the day before he was transferred to LCF. Compl. at PageID.9. Nor does plaintiff even allege the party grieved. *Id.* The only other allegation related to this claim is that Dr. Cooley responded to the grievance on July 31, 2013, the day after plaintiff's transfer. Based on these allegations, plaintiff did not engage in protected conduct until, at most, one day before his transfer to LCF. In summary, plaintiff has not alleged any facts sufficient to support the conclusory claim that he was denied treatment for filing a grievance, nor has he presented any factual basis for this claim.

### III.     Recommendation

For these reasons, I respectfully recommend that defendants motions for summary judgment (docket nos. 13 and 19) be **GRANTED** and that this action be **TERMINATED**.


Dated:  February 29, 2016           /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).